

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

February 17, 1976

The Honorable Clayton T. Garrison       Opinion No. H-781
Executive Director
Texas Parks & Wildlife Department       Re: Use of certain
John H. Reagan Building                      license fees by the
Austin, Texas   78701                        Parks and Wildlife
                                             Department for its
                                             Seafood Marketing
                                             Program.

Dear Mr. Garrison:

You have asked our opinion concerning article 978f-3c,
Vernon's Texas Penal Auxiliary Laws, which empowered and
directed the Texas Parks and Wildlife Commission to develop
a seafood marketing program.  This article was repealed by
the passage of the Texas Parks and Wildlife Code, effective
September 1, 1975, but a similar provision is found in sec-
tion 12.009 of the new Code, which provides:

> Sec. 12.009.  Seafood Consumption Program
>
> (a)  The department shall develop and
> administer a market promotion program to
> foster and expand the sale and consumption
> of seafood by the public.  The department
> may use its own personnel or contract for
> personnel and use only state funds or state
> funds in conjunction with federal or private
> funds.
> (b)  Forty percent of the funds collected
> from commercial fisherman's license fees, 20
> percent of wholesale fish dealers' license
> fees and wholesale truck dealers' fish license
> fees, and 50 percent of shrimp house operators'
> license fees shall be used by the department
> in carrying out the program required by this
> section.

You question the setting aside of the various license monies since this percentage allocation may have conflicted with article 978f-3a, section 6, Vernon's Texas Penal Auxiliary Laws, which read in part:

> [N]o funds accruing to the State of Texas from hunting license fees, fishing license fees, commercial fishing boat license fees, oyster license fees, net license fees, trawl license fees, seine license fees, . . . shall be diverted for any other purposes than for making necessary studies and management of fish and game resources of this State and for the expansion and development of additional opportunities of hunting and fishing in State-owned land and waters for the benefit of the public wherever practicable and to embrace wherever feasible the principle of multiple use of our land and waters for better hunting and fishing opportunities.

Section 6 has now been replaced by sections 13.313, 83.001 and 83.003 of the Texas Parks and Wildlife Code, but the specific portion of section 6 quoted above does not appear in the new Code.

In connection with these statutes, you ask:

> 1.  Is the Parks and Wildlife Department required to allocate the percentages of the license fees specified by Article 978f-3c, Vernon's Texas Penal Auxiliary Laws [section 12.009, Texas Parks and Wildlife Code], to the Seafood Marketing Program, subject to specific legislative appropriation; Does the language in Article 978f-3a, Vernon's Texas Penal Auxiliary Laws, leave entirely to the discretion of the Commission and/or Department, whether or not such program will be carried out and the types of seafood products to be affected?

2.  If the Department must reserve the percentages of fees for a seafood marketing program as indicated by article 978f-3c [section 12.009, Texas Parks and Wildlife Code], should such license receipts so allocated, in excess of the amount expended by the Department for the marketing program, be reserved in the fund balance, subject to future legislative appropriation for the Seafood Marketing Program?

3.  If the Legislature fails to appropriate funds provided for by article 978f-3c, Vernon's Texas Penal Auxiliary Laws [section 12.009, Texas Parks and Wildlife Code], are they available to be used for other purposes authorized by law and for which appropriations are made?

As we interpret your questions, you have asked for our opinion concerning fees collected both prior and subsequent to the passage of the new Parks and Wildlife Code. In regard to the period prior to the new Code, we note that article 978f-3a was enacted in 1963 (see Acts 1963, 58th Leg., ch. 58, p. 104) and the questioned language of section 6 thereof had not been amended at the time of the passage of article 978f-3c, the Seafood Marketing Program Act, in 1967. See Acts 1967, 60th Leg., ch. 173, § 5, p. 363.

If the two statutory provisions are considered inconsistent or in conflict, then the latter will control. Code Construction Act, V.T.C.S. art. 5429b-2, § 3.05. Accordingly, the provision of the seafood marketing enactment (article 978f-3c) prevailed over article 978f-3a and the Parks and Wildlife Department was required to comply with the requirement to set aside percentages of certain licensing fees for the marketing program.

Moreover, article 978f-3a (together with section 6) was a general statute setting up the Parks and Wildlife Department and generally providing for its structure, its powers and its duties. On the contrary, article 978-3c was a specific statute dealing with the particular subject of a seafood marketing development program and so prevailed over the general statute setting up the Department Code. Construction Act, V.T.C.S. art. 5429b-2, § 3.06. This statutory construction rule, a specific provision prevailing over a general enactment, lends additional weight to our opinion that your Department was required to comply with the provisions of 978f-3c and develop and support the seafood marketing program by the proper allocation and use of the license fees collected.

Accordingly, both before and after the passage of the Code, you had no discretion insofar as the setting aside of the appropriate amount of license fees to institute and implement a seafood marketing program as required by statute. You do have discretion, of course, in designing and structuring an appropriate program so long as the legislative dictate--that the promotion shall "further and expand the consumption of seafood by the public"--is satisfied.

You further observe that more monies have been collected from the named fees of section 12.009 than the Legislature has appropriated. You ask if these surplus monies, over and above the appropriated funds, can be used for purposes other than the seafood marketing program. Unless the Legislature should amend section 12.009 of the Parks and Wildlife Code to permit a different usage of the pertinent fees, the statutorily allocated monies should be retained to be used as the Legislature has directed, if and when the Legislature sees fit to appropriate such segregated fees. Attorney General Opinions H-528 (1975) and M-1084 (1972). Such fees cannot be used for other departmental uses.

## S U M M A R Y

The Parks and Wildlife Department is
required to set aside forty percent of
the funds collected from Commercial
Fisherman's License fees, twenty percent
of the funds collected from Wholesale
Fish Dealers' License fees and fifty
percent of the funds collected from
Shrimp House Operators' License fees
for use in a program to foster and
expand the sale and consumption of
seafoods by the public.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb